United States District Court

District of Maine


GLL GmbH & Co. Messeturm KG,    )
    )
        Plaintiff,    )
    )
      v.    )    Civ. No. 07-174-B-H
    )
RICHARD LaVECCHIA and    )
CHRISTIANE LaVECCHIA,    )
    )
        Defendants.    )


MEMORANDUM OF DECISION ON MOTION FOR RELIEF FROM
FILING COMPULSORY COUNTERCLAIM (Doc. No. 9);
OBJECTION TO SCHEDULING ORDER AND
MOTION TO STAY DISCOVERY (Doc. No. 13); AND
MOTION TO STAY DISCOVERY (Doc. No. 14)[1]


Richard LaVecchia and Christiane LaVecchia contend that they should be relieved of the

duty to file compulsory counterclaims against GLL GmbH & Co. Messeturm KG (Messeturm

KG), in response to Messeturm KG's claims arising from alleged fraudulent and penurious

conduct by the LaVecchias in Germany, and that discovery in this civil action should be stayed

until any criminal charges against them for the same conduct in Germany are resolved.  They

assert that these measures must be taken by the Court in order to preserve their rights under the

Fifth Amendment not to be made witnesses against themselves in any criminal proceeding.  I

deny the motions.  Separately, the LaVecchias object to the scheduling order, requesting a one

year delay of all deadlines applicable to them and movement of the case to the complex track.  I

---

[1]    On the electronic docket, the motion to stay discovery is entered separately from the objection to the scheduling order, but the only available written motion on the docket is at entry 13.  The separate entries are important here because, although the motion to stay discovery (entry 14) is disposed of in this memorandum of decision, the objection to the scheduling order remains pending for further proceedings outlined herein.

decline to move the case to the complex track.  As discussed below, there is a need for the parties to discuss whether they can agree to the issuance of a protective order and what the provisions of such an order should be.  Additionally, it appears appropriate that some of the deadlines in the existing scheduling order should be pushed back to account for the delay occasioned by the issue of the German privilege against self-incrimination and by the need to conduct trans-national discovery.  Those issues can be addressed outside of the presently pending motions.  I set forth the parameters for proceeding on those issues herein.

## Background

According to the complaint, the LaVecchias operated a property management business engaged by Messeturm KG to manage an office building known as Messeturm Frankfurt, located in Frankfurt, Germany.  It is alleged that the LaVecchias used this position to purloin in excess of a million Euros through kickbacks and bribes obtained from contractors employed to work on the Messeturm Frankfurt.  Messeturm KG asserts that the LaVecchias fled the jurisdiction of the German government when they were approached by German investigators.  The Municipal Court Frankfurt am Main issued an arrest warrant in March 2006 based on the criminal investigation. Richard LaVecchia is a United States citizen.  His wife, Christiane, is a German citizen.  They both presently reside in Deer Isle, Maine.

## Discussion

The pending motions are premised on the proposition that the filing of a counterclaim and the giving of any testimonial evidence in civil discovery would deprive the LaVecchias of their rights under the Self-Incrimination Clause of the Fifth Amendment of the United States Constitution.  In United States v. Balsys, the Supreme Court held that the privilege to remain silent absent a grant of immunity is not available to one who does not face criminal prosecution

2

by the federal government or a state government; that the proper reading of the Clause is one that limits in principle "to concern with prosecution by a sovereign that is itself bound by the Clause." 524 U.S. 666, 689 (1998). The holding of <u>Balsys</u> deprives the LaVecchias of the basic premise of their motions.

The LaVecchias seek to distinguish this case from <u>Balsys</u> on the ground that this is a "run-of-the-mill civil action by [a] private party," whereas <u>Balsys</u> was a deportation proceeding in which the United States was a party and in which the United States had an interest in the foreign prosecution. (Doc. No. 15 at 2.) To my view, however, because the United States was a party and had an interest in the foreign prosecution and because the private interests at stake concerned a matter as significant as deportation, the Court's denial of the protection of the Clause in <u>Balsys</u> makes it even more fitting, not less, that the Clause should not avail a defendant in a "run-of-the-mill" civil case in which no domestic sovereign has any apparent interest.

Next, the LaVecchias argue that the Clause does protect them here because there is a "remote possibility" of criminal proceeding being instituted against them by the federal government. (Doc. No. 20 at 4.) They fail to identify any potential claim, however, and it is not apparent what criminal statute would subject either of the defendants to a criminal prosecution for alleged acts of fraud committed in a foreign jurisdiction against a foreign entity. Although it is conceivable that a fraud perpetrated against the federal government on foreign soil could subject the LaVecchias to prosecution by the federal government, <u>see</u> <u>United States v. Bowman</u>, 260 U.S. 94, 97-100 (1922), there are no facts apparent from the complaint or the pending motions that might trigger such an exercise of jurisdiction by the federal government. That even Nazi war crimes prosecution requires extradition or deportation, as in <u>Balsys</u>, despite the U.S. Government's agreement to assist with bringing the perpetrators of Nazi brutality to justice,

makes one seriously question how a commercial fraud claim arising from private conduct in Germany could plausibly give rise to a valid federal prosecution in this country. The LaVecchias fail to make even a colorable case for such an eventuality.

It is within the Court's discretion whether to stay civil litigation in deference to parallel criminal proceeding, and it is to be exercised along prudential lines and only where the interests of justice counsel in favor of the stay. Microfinancial, Inc. v. Premier Holidays Int'l, Inc., 385 F.3d 72, 77-78 (1st Cir. 2004). In order to demonstrate an "entitlement" to a stay, however, a party bears the "heavy burden" of demonstrating that there would be a "clear case of hardship" if a stay did not issue. Id. at 77. Insofar as the Fifth Amendment has no application in the context of this case, the LaVecchias fail to demonstrate any overriding hardship that would justify the issuance of a stay order or even, more broadly, that the interests of justice favor a stay.

Alternatively, the LaVecchias argue that they should be able to assert their rights under German law to resist discovery that might expose them to self-incrimination. (Doc. No. 15 at 3-5.) They maintain that there is "no reason for this case to have been filed in the United States except to circumvent the protections available to the defendants under German law." (Id. at 4.) If one were to take the allegations in the complaint as true, including the allegation that the LaVecchias fled the jurisdiction of the German investigators, then the claim of circumvention would have a distinctly ironic flavor to it. In any event, Messeturm KG is not the German government and the LaVecchias's decision to locate themselves on Deer Isle leaves Messeturm KG with little option at present if it wishes to pursue a remedy for the alleged harm. Indeed, it would seem to be the LaVecchias' position that they can indefinitely circumvent any potential consequences of the alleged conduct by the simple fiat of locating themselves in Maine. I conclude that this voluntary relocation to Maine, which places in jeopardy the availability of the

4

German privilege against self-incrimination, cannot justify a stay order precisely because the interest the LaVecchias seek to protect is only in jeopardy because of their voluntary relocation here. A contrary ruling would create an incentive to flee the system of justice that affords and would otherwise uphold the privilege. Certainly nothing in Madanes v. Madanes, 186 F.R.D. 279 (S.D.N.Y. 1999), the case chiefly relied on by the LaVecchias, would support the issuance of a stay based on a concern over the preservation of a foreign privilege against self-incrimination.

In Madanes, the District Court for the Southern District of New York chose to recognize the Argentine privilege against self-incrimination on grounds of comity. Id. at 285-86. The civil litigation was commenced by one Argentine citizen against two other Argentine citizens. Id. at 281. The court recognized the foreign privilege by crafting a modified protective order, not by staying the action. Id. at 287. Thus, assuming for the sake of argument that the application of the foreign privilege was really called for in Madanes, the case clearly does not support the proposition that a stay should issue in order to preserve a foreign privilege. At best, the Court might fashion a protective order to provide a degree of protection to the LaVecchias in relation to any future criminal proceedings in Germany that arise out of the same facts as this civil litigation.[2] At this stage, even if it is assumed that the Madanes decision reflects the proper approach to take in a case of this kind, it is not entirely clear what the German privilege calls for in relation to the production of testimonial or documentary evidence in a civil proceeding, there

---

[2]       I am not entirely convinced that comity requires this Court to preserve the foreign privilege. Among other concerns, it is not apparent to me from the LaVecchia's presentation that the privilege would be lost if the LaVecchias were compelled by a court order to participate fully in discovery in this litigation. It would seem that potential use of the fruits of such discovery by German authorities would present an evidentiary question for a German tribunal to address in the event that criminal proceedings should proceed there. In any event, the exact contours of the German privilege do not need to be determined at this juncture because the relief that is requested, a stay, is not justified.

do not appear to be any discovery requests pending, and the LaVecchias have not yet put forward a proposed confidentiality order.  The request for a stay of discovery (Doc. No. 14) is *DENIED*.  Any further consideration of whether the German privilege should be protected in this litigation requires more targeted briefing and evidence sufficient to educate the Court about its ordinary application.  Additionally, the parties should have an opportunity to see if they can agree to a protective order before the Court wades into this legal thicket.

In addition to seeking an indefinite stay, the LaVecchias ask to be relieved of the requirement of filing a compulsory counterclaim under Rule 13.  The counterclaims to which they refer are cryptically described as arising from Messeturm KG's "instigation of the [criminal] charges."  (Doc. No. 9 at 3.)  The LaVecchias do not even attempt to articulate how it is that counterclaims based on "instigation" arise out of the same transaction or occurrences as the alleged bribery and kickback scheme set forth in Messeturm KG's complaint.  It would seem that any alleged instigation conduct on the part of Messeturm can be rather neatly distinguished from alleged bribery and graft on the part of the LaVecchias.  I regard the LaVecchias's failure to explain why their proposed counterclaims are compulsory to be a failure to carry their burden on the motion.  The request for relief from the requirement of filing a compulsory counterclaim is *DENIED*.

Finally, the LaVecchias object to the Court's scheduling order.  They would like the case placed on the complex track because there will be a need for travel to Germany and for translation of testimony from German to English.  (Doc. No. 13 at 4.)  They would also like their initial disclosure deadline to be pushed back indefinitely, until the criminal matter is resolved, or at least by one full year.  (Id. at 5.)  These parameters are repeated with respect to the other deadlines in the scheduling order.  (Id. at 5-8.)  Messeturm KG opposes placement of this case on

the complex track.  Otherwise, it agrees that the discovery deadline should be pushed back to account for translation time and the use of the Hague Convention[3] to accomplish discovery, but only for four to six months.  (Doc. No. 17 at 2.)  They also submit that the number of depositions, requests for production, and admissions be increased, though there is no explanation why.  (Id. at 2-3.)  The parties are hereby ordered to confer in regard to the question of whether a protective order should issue and what its provisions should be.  They will arrange for a teleconference to occur no later than March 3, 2008, to address, primarily, that issue.  If further briefing is required, I will establish the schedule for it at that time.  Additionally, I will address the matter of deadlines and dispose of the presently pending objection to the scheduling order (Doc. No. 13) at that time.

### Conclusion

The Motion for Relief from the Requirement of Filing a Compulsory Counterclaim (Doc. No. 9) is DENIED;

The Motion for Stay of Discovery (Doc. No. 14) is DENIED;

The Objection to Scheduling Order (Doc. No. 13) will remain pending and will be disposed of in a report and order on the forthcoming telephone conference.

### CERTIFICATE

Any objections to this Memorandum of Decision shall be filed in accordance with Fed.R.Civ.P. 72.

---

[3]      The reference is to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.  As discussed in Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa, 482 U.S. 522 (1987), adherence to the Convention is not mandatory insofar as discovery between the parties is concerned.  Id. at 524, 540-42.

***So Ordered.***

February 15, 2008                         /s/ Margaret J. Kravchuk
                                          U.S. Magistrate Judge